```
                      UNITED STATES BANKRUPTCY COURT
                     FOR THE NORTHERN DISTRICT OF IOWA


IN RE:                          )
                                )     Chapter 7
LARISSA L. JOHNSTON,            )
                                )     Bankruptcy No. 05-05136
     Debtor.                    )
                                )
LARISSA L. JOHNSTON,            )
                                )     Adversary No. 06-09110
     Plaintiff,                 )
                                )
vs.                             )
                                )
FIFTH THIRD BANKCORP., et al    )
                                )
     Defendant,                 )
                                )
EDUCATIONAL CREDIT              )
MANAGEMENT CORP.,               )
                                )
     Intervenor/Defendant.      )
```

**ORDER RE: DEBTOR'S COMPLAINT TO DETERMINE
DISCHARGEABILITY OF STUDENT LOANS**

This matter came before the undersigned for trial on January 23, 2008. Debtor/Plaintiff Larissa Johnston appeared with Attorney Steven Klesner. Intervenor/Defendant Educational Credit Management Corp. ("ECMC") was represented by Attorney Lance Gritters. After the presentation of evidence and argument, the Court took the matter under advisement. The time for filing briefs has passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

**STATEMENT OF THE CASE**

Debtor seeks an undue hardship discharge of her student loan under § 523(a)(8). ECMC asserts Debtor is able to pay the student loan without undue hardship.

**FINDINGS OF FACT**

Debtor is 36 years old and grew up in Sioux City, Iowa. She suffers from Schizoaffective Disorder. Debtor testified that she started having symptoms in high school, but was not treated until her second or third year of undergraduate education. She

testified that, when she was untreated, she experienced paranoia, a split reality, visual or auditory delusions, extreme moods, depression and psychotic depression. Her delusions included thoughts that the faculty was conspiring against her and that she was receiving messages through the radio.

Debtor has been taking medication to regulate her illness, including an anti-psychotic, an anti-depressant, hormones and a sleep aid. Currently, she is being treated by a psychiatrist for medicinal management. A recent change in medication is causing significant discomfort. At the time of trial, Debtor had not slept for three days. A state-sponsored assistance program, "state papers," pays for her visits to a psychiatrist and for anti-psychotic and anti-depressant medication. Some of Debtor's medications are not covered by public assistance. Debtor has been hospitalized because of her condition. She testified that some of the symptoms she experiences have made it very difficult to maintain steady employment. She said that she has never felt "normal," and that she is never completely symptom- or side effect-free.

One factor that may have negatively impacted Debtor's condition is that she is an alcoholic. Presently, she is not using alcohol. Her medical records and testimony reflect that Debtor's alcohol abuse started when she was 27. She testified that she believed alcohol would and did help with her anxiety, but the longer she abused it, the more it worsened her condition. Debtor testified that drinking alcohol eventually exacerbated her depression. She still gets occasional cravings to drink, but she has been sober for over a year.

Debtor attended the University of Iowa for five years and got her B.A. in psychology in 1995 with a cumulative GPA of 3.34. After graduation, Debtor moved to New York City. She worked at Venture House as a counselor for people with mental disabilities, utilizing her psychology degree as well as her own experience in the mental health system. Also at this time Plaintiff decided to attend New York University part-time to get her masters degree in nonprofit management. The debt to ECMC arose from Debtor's graduate studies at New York University where she was unable to complete her degree. After quitting and starting another job in New York City, and at the insistence of her older sister, Debtor's deteriorating mental health condition led her to move back to Iowa.

Initially, Debtor moved to Sioux City where she lived temporarily with her grandmother. A few months later, she decided to move to Iowa City, where she currently resides.

Debtor testified that she chose Iowa City because she was familiar with it, she knew it had good public transportation, and she believed that she could obtain a full-time, professional job there.  Debtor had difficulty finding a full-time job so she started taking paralegal courses at Kirkwood College through a vocational rehab program to try to hone her business skills.  She stopped taking classes in the Fall of 2007 and did not complete the program.

Since moving back from New York, where her annual earnings topped out at $37,000 in 2001, Debtor has worked odd jobs and temporary jobs.  She was able to turn a long-term temporary job into full-time employment with Roberts Dairy, but she was let go in 2006 when the company reorganized.  Debtor testified that she works through a temp agency that pays between $8.50 and $10.00 per hour.  Since 2001, Debtor's annual income has ranged between $5,896 and $14,291.  She testified that due to her condition, there are times she is unable to work.  She has difficulties working in stressful environments.  At the time of the trial, Debtor had not worked since the Christmas holidays, when she was able to periodically work in short 3 hour shifts.

When questioned about the job prospects in the Iowa City area, Debtor responded that they were not good for either her or her husband.  She does not drive, or even own a vehicle, and this limits where she can find work.  Debtor testified that the anxiety caused by her condition makes her fearful of driving, though she has never been told by a doctor that she should not drive.  When questioned on cross-examination about whether moving somewhere different would improve her and her husband's job prospects and earning potential, Debtor stated that it would.  She testified she is unable to do the kind of work in Iowa that she was able to do in New York.  She also testified that it would be difficult to move at this time.  Her husband shares custody of his 16 year old son from a previous marriage.  Additionally, Debtor is able to receive medical assistance in Iowa that she is unable to receive elsewhere.

Debtor and her husband were married in October 2006.  Mr. Filios has gross earnings of approximately $30,000 per year working as a graphic designer.  He also currently receives alimony and child support payments totaling approximately $600 per month.  These payments will end in a few years.  Mr. Filios' net income is $2,400 per month.  Household expenses, which appear reasonable and necessary, total approximately $2,700 per month.  Debtor and her husband have a net monthly defiency of $300.

3

Exhibit O includes Debtor's bank statements from January 2005 until June 2007 showing excessive nonessential spending at online stores.  Debtor testified that she believes she made these purchases to overcome a sense of depravation and because of a genetic predisposition.  Her mother and aunt also have problems with compulsive spending and hoarding.  Debtor testified that she now has her compulsive spending under control.

Debtor's primary debt is the $66,000 she owes ECMC.  When Debtor filed her Chapter 7 petition in October 2005, she listed total unsecured debts of almost $150,000, including student loans totaling $91,000.  Debtor consolidated her student loans, but has not made any payments on them.  Debtor's husband has long-standing credit card debt from his previous marriage.  He owns two vehicles, both of which are broken down, and one of which is on the verge of being repossessed.  Debtor testified that they are three months behind on their rent payment.  Mr. Filios recently obtained his bachelor's degree in graphic design and has his own student loan payments to make.  He also started but did not complete a masters program.  Loans for that program are not yet due.

## CONCLUSIONS OF LAW

Student loan debts are not discharged in bankruptcy "unless excepting such debt from discharge . . . will impose an undue hardship on the debtor and the debtor's dependents."  11 U.S.C. § 523(a)(8).  Debtor must prove the existence of undue hardship by a preponderance of the evidence.  <u>In re Cheney</u>, 280 B.R. 648, 659 (N.D. Iowa 2002).

"Undue hardship" requires examination of the totality of circumstances.  <u>In re Reynolds</u>, 425 F.3d 526, 532 (8th Cir. 2005).

> In evaluating the totality-of-the-circumstances, our bankruptcy . . . courts should consider: (1) the debtor's past, present, and reasonably reliable future financial resources; (2) a calculation of the debtor's and her dependent's reasonable necessary living expenses; and (3) any other relevant facts and circumstances surrounding each particular bankruptcy case.  Simply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt - while still allowing for a minimal standard of living - then the debt should not be discharged.

4

In re Long, 322 F.3d 549, 554 (8th Cir. 2003) (citations omitted). The first factor "will require a special consideration of the debtor's present employment and financial situation – including assets, expenses, and earnings – along with the prospect of future changes – positive or adverse – in the debtor's financial position." Id.; In re Nelson, 343 B.R. 919, 922 (Bankr. S.D. Iowa 2006) (Kilburg, J.).

The second factor, concerning debtor's living expenses, requires a determination of what expenses are "reasonable and necessary." In re Long, 292 B.R. 635, 638 (B.A.P. 8th Cir. 2003) (on remand from 8th Circuit). To be reasonable and necessary, expenses must be modest and commensurate with the debtor's resources. In re Meling, 263 B.R. 275, 279 (Bankr. N.D. Iowa 2001), aff'd, 2002 WL 32107248 (N.D. Iowa 2002).

Other relevant factors and circumstances of each individual bankruptcy case may include: (1) the debtor's good faith effort to repay the loan, or a debtor's bad faith in non-repayment, (2) whether the debtor has made a good faith effort to obtain employment, maximize income, and minimize expenses, and (3) whether the debtor is suffering truly severe, even uniquely difficult financial circumstances, not merely severe financial difficulty. Faktor v. United States, 306 B.R. 256, 264 (Bankr. N.D. Iowa 2004); In re Wilson, 270 B.R. 290, 294 (Bankr. N.D. Iowa 2001). The availability of an "Income Contingent Repayment Plan" ("ICRP") is but one factor to be considered. In re Lee, 352 B.R. 91, 95 (B.A.P. 8th Cir. 2006). Courts have found undue hardship under § 523(a)(8) where the debtors had chronic or recurrent illnesses which impacted their employment or financial situation. See Reynolds, 425 F.3d at 533 (major depressive disorder and dysthymia); In re Morse, 345 B.R. 668, 670 (Bankr. N.D. Iowa 2006) (bipolar disorder and major depression); Meling, 263 B.R. at 279 (bipolar disorder which was severely debilitating).

## ANALYSIS

Debtor is currently unemployed and has no assets. Subtracting her family's reasonable expenses from her husband's monthly net earnings and support payments results in a monthly deficit of $300. Neither Debtor nor her husband have any disposable income. Debtor may be able to find employment at a rate similar to what she has earned in the past few years. This, however, will not greatly improve the family finances as the support and alimony payments Mr. Filios receives will be discontinued soon. The Court has evaluated ECMC's assertions that Debtor could pay monthly payments between $369.50 and

5

$436.94 under the Ford Program repayment plans.  See Exhibit P (with calculations based on Debtor's 2006 tax return).  This evidence is contradicted, however, by Debtor's current lack of income and the negative monthly household disposable income.

Debtor has not made any payments toward her student loans.  This is largely attributable to her mental illness.  Debtor has been unable to find steady employment sufficient to allow her to make student loan payments since she discontinued her education.  The Court concludes Debtor has made good faith efforts to work to the extent she is able in light of her mental illness.  Debtor is currently suffering severe financial circumstances and will continue to do so into the indefinite future in light of her chronic illness.  A fair evaluation of this record reveals a very candid debtor who has no reasonable possibility of paying any meaningful amount toward these student loans.  She has met her burden by establishing that excepting the student loan debt to ECMC from discharge will impose an undue hardship on her.

**WHEREFORE**, Debtor's Complaint to Determine Dischargeability of Student Loans is GRANTED.

**FURTHER**, the student loan debt owed to Educational Credit Management Corp. is DISCHARGED.

DATED AND ENTERED:
 March 11, 2008.

_____
PAUL J. KILBURG
U.S. BANKRUPTCY JUDGE

6